IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NEBRASKA MACHINERY COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>CARGOTEC SOLUTIONS, LLC, f/k/a KALMAR INDUSTRIES, USA, LLC,<br><br>Defendant. | 8:12CV394<br><br>ORDER |

This matter is before the court on two motions. The first motion is the plaintiff's, Nebraska Machinery Company (Nebraska Machinery), Motion to Dismiss or Stay Arbitration and to Determine Arbitrability (Filing No. 6). Nebraska Machinery filed a brief (Filing No. 7) and index of evidence (Filing No. 8) in support of its motion. Cargotec Solutions, LLC, formerly known as Kalmar Industries, USA, LLC (Cargotec) filed a brief (Filing No. 13) and index of evidence (Filing No. 14) in opposition. Nebraska Machinery filed a brief (Filing No. 17) in reply. The second motion is the Cargotec's Motion to Compel Arbitration and to Dismiss or, Alternatively, Stay Proceedings (Filing No. 15). Cargotec filed a brief (Filing No. 16) in support of its motion. Nebraska Machinery filed a brief (Filing No. 18) in opposition. Cargotec filed a brief (Filing No. 19) in reply.

## BACKGROUND

This case pertains to a dispute over the terms of contracts for the sale of goods. Specifically, Nebraska Machinery and Cargotec disagree whether the parties reached arbitration and indemnification agreements. On March 23, 2007, Cargotec submitted Purchase Order Number 754399 (PO No. 1) to Nebraska Machinery for CAT C6.6 engines. **See** Filing No. 8-2 Ex. A - PO No. 1. PO No. 1 indicated: "Standard Kalmar terms and conditions Form F-027 and Packing & Shipping Requirements Form F-058 will apply to this order. If you do not have a copy of these forms on file, please contact the buyer indicated." *Id.* Form F-027 contains arbitration and indemnification provisions. **See** Filing No. 8-1 Ex. A - Form F-027. Specifically, Form F-027 § 7, entitled "HOLD HARMLESS," provides:

> Seller agrees to indemnify, save and keep harmless the Buyer from and against any and all loss, damage, cost, charges or expenses including attorney fees or claims for the same which the Buyer may suffer or sustain or be in any way subjected to on account of . . . damage to or loss from or in any way connected with the products or services which are provided by seller pursuant to this contract.

See Filing No. 8-1 Ex. A - Form F-027. Section 14, entitled "ARBITRATION," provides:

> At Buyer's sole election, any controversy or claim arising out of or related to this Purchase Order shall be resolved by arbitration under the Federal Arbitration Act and according to the Commercial Arbitration Rules of the American Arbitration Association (AAA) . . . . Notice of demand for arbitration shall be filed in writing with the seller and AAA.

*Id.* Nebraska Machinery contends it never received Form F-027. See Filing No. 7 - Brief p. 4; Filing No. 8-1 - Watson Aff. ¶ 5; Filing No. 8-2 - Krisel Aff. ¶ 3. In response to PO No. 1, on March 28, 2007, Nebraska Machinery created and sent to Cargotec a purchase order (Nebraska Machinery PO No. 1) on a separate form and an invoice for the sale of C6.6 engines. See Filing No. 8-2 Ex. B - Nebraska Machinery PO No. 1; Ex. D - Nebraska Machinery Invoice No. 1. Nebraska Machinery PO No. 1 indicated the order was "SUBJECT TO THE TERMS AND CONDITIONS ON THE REVERSE SIDE HEREOF . . . ." See Filing No. 8-2 Ex. B - Nebraska Machinery PO No. 1. Nebraska Machinery's terms and conditions did not include arbitration or indemnification provisions. See Filing No. 8-2 Ex. C - Nebraska Machinery Terms and Conditions. Cargotec contends it received Nebraska Machinery Invoice No. 1 but never received Nebraska Machinery PO No. 1 or terms and conditions. See Filing No. 13 - Response p. 4-5; Filing No. 14-1 - Yohe Aff. ¶ 4.

On April 20, 2007, Cargotec submitted Purchase Order Number 754473 (PO No. 2) to Nebraska Machinery for additional CAT C6.6 engines. See Filing No. 8-2 Ex. E - PO No. 2. PO No. 2 contained similar language and terms as PO No. 1. *Id.*; see Filing No. 8-2 Ex. A - PO No. 1. In response to PO No. 2, on April 25, 2007, Nebraska Machinery created and sent to Cargotec a purchase order (Nebraska Machinery PO No. 2) on a separate form and an invoice for the sale of the C6.6 engines. See Filing No. 8-2 Ex. F - Nebraska Machinery PO No. 2; Ex. G - Nebraska Machinery Invoice No. 2.

Nebraska Machinery PO No. 2 contained similar terms as Nebraska Machinery PO No. 1.  *Id.*; **see** Filing No. 8-2 Ex. B - Nebraska Machinery PO No. 1.  Nebraska Machinery and Cargotec contend they did not receive the opposing party's terms and conditions with regard to the second purchase order.  **See** Filing No. 8-2 - Krisel Aff. ¶ 8-9; Filing No. 14-1 - Yohe Aff. ¶ 4.  Nebraska Machinery subsequently delivered the engines to Cargotec and Cargotec remitted payment.  **See** Filing No. 8-2 - Krisel Aff. ¶ 10.

In May and July 2007, Cargotec, through an authorized dealer, Sharron Group, Inc. (Sharron), sold six yard trucks to Containerport Group, Inc. (Containerport).  **See** Filing No. 5 - Amended Complaint ¶ 7.  Cargotec equipped the yard trucks with CAT C6.6 engines purchased from Nebraska Machinery.  *Id.* ¶ 8-10.  In early 2009, after determining the yard trucks did not perform properly, Containerport sued Sharron.  *Id.* ¶ 24.  On July 20, 2009, Sharron filed third party claims against Cargotec and Nebraska Machinery, among other parties.  *Id.* ¶ 27.  After Cargotec agreed to indemnify Sharron, Cargotec was dismissed from the Containerport action.  *Id.* ¶ 31.  Subsequently, on November 11, 2009, Cargotec sent a letter to Nebraska Machinery requesting Nebraska Machinery indemnify Cargotec.  *Id.* ¶ 32.  On January 8, 2010, Nebraska Machinery rejected Cargotec's demand for contractual indemnity.  *Id.* ¶ 33.  In February 2010, Sharron dismissed Nebraska Machinery from the Containerport action.  *Id.* ¶ 34.

On September 29, 2012, Cargotec filed a Demand for Arbitration against Nebraska Machinery in Kansas.  **See** Filing No. 5 Ex. A - Demand for Arbitration.  Cargotec alleged Nebraska Machinery "agreed to indemnify and hold harmless [Cargotec] for all loss or damage in connection with the [engines] provided."  *Id.*  Cargotec further alleged the basis for arbitration was an arbitration agreement Nebraska Machinery entered into on March 23, 2007, and April 20, 2007.  *Id.*

On November 8, 2012, Nebraska Machinery filed the current action against Cargotec for declaratory relief.  **See** Filing No. 5 - Amended Complaint.  Nebraska Machinery alleges Cargotec's demand for arbitration and indemnity is improper.  *Id.*  On December 7, 2012, Nebraska Machinery filed its motion seeking dismissal of Cargotec's arbitration proceeding, or at least a stay of the proceeding pending this court's decision on arbitrability.  **See** Filing No. 6 - Nebraska Machinery's Motion.  Nebraska Machinery alleges there is no arbitration or indemnification agreement between the parties.  *Id.*  On

December 21, 2012, Cargotec filed its motion seeking to compel arbitration pursuant to the parties' arbitration agreement.  **See** Filing No. 15 - Cargotec's Motion.

## ANALYSIS

**A.     Jurisdiction**

Nebraska Machinery argues the court has jurisdiction to determine whether the parties reached an arbitration agreement.  **See** Filing No. 17 - Reply p. 3-6.  Cargotec argues the court does not have authority to dismiss a pending arbitration and determine the question of arbitrability.  **See** Filing No. 13 - Response p. 7.  Cargotec argues the parties entered into two contracts wherein they clearly and unmistakably agreed to have an arbitrator decide the question of arbitrability.  *Id.* at 8, 12.  Cargotec argues incorporation of the Commercial Rules of the American Arbitration Association (AAA Rules) constituted "a clear and unmistakable expression of the parties' intent to leave the question of arbitrability to an arbitrator."  *Id.* (**citing** ***Fallo v. High-Tech Inst.***, 559 F.3d 874, 878 (8th Cir. 2009)).  Cargotec argues any controversy under the contracts, including arbitrability and indemnification, are within an arbitrator's jurisdiction to decide.  *Id.* at 6-9.

"The Federal Arbitration Act, 9 U.S.C. § 4, states that a party aggrieved by the failure of another to arbitrate under a written agreement may petition the district court for an order compelling arbitration."  ***Art Etc. LLC v. Angel Gifts, Inc.***, 686 F.3d 654, 656 (8th Cir. 2012).  "[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes-but only those disputes-that the parties have agreed to submit to arbitration."  ***First Options of Chicago, Inc. v. Kaplan***, 514 U.S. 938, 943 (1995).  If a valid arbitration agreement exists and the dispute falls within the scope of that agreement, a dispute must be submitted to arbitration.  **See** ***Lyster v. Ryan's Family Steak Houses, Inc.***, 239 F.3d 943, 946 (8th Cir. 2001).

The issue of "whether the parties have a valid arbitration agreement at all" is a "gateway matter" that requires judicial resolution.  ***Green Tree Fin. Corp. v. Bazzle***, 539 U.S. 444, 452 (2003) (plurality opinion); **see** ***Howsam v. Dean Witter Reynolds, Inc.,*** 537 U.S. 79, 83 (2002) ("[W]hether the parties have agreed to submit a particular dispute to arbitration is typically an issue for judicial determination.") (internal citation omitted); **see also** ***Barker v. Golf U.S.A., Inc.***, 154 F.3d 788, 791 (8th Cir. 1998)

4

(stating "a court must decide whether [an] agreement to arbitrate is valid"). The Supreme Court noted the arbitrability determination depends on whether the parties "agree[d] to submit the arbitrability question itself to arbitration." **Kaplan**, 514 U.S. at 943. "[W]hen courts decide whether a party has agreed that arbitrators should decide arbitrability: Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." **Kaplan**, 514 U.S. at 944 (alterations in original) (**citing AT & T Techs., Inc. v. Comm's Workers of Am.**, 475 U.S. 643, 649 (1986)). "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." **AT & T Techs.**, 475 U.S. at 649. An "arbitration [agreement's] provision's incorporation of the AAA Rules . . . constitutes a clear and unmistakable expression of the parties' intent to leave the question of arbitrability to an arbitrator." **Fallo**, 559 F.3d at 878.

> [G]iven the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the "who should decide arbitrability" point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide.

**Kaplan**, 514 U.S. at 945.

Although Cargotec's arbitration provision incorporated the AAA Rules, this court maintains authority to determine arbitrability. In **Fallo**, which Cargotec argues supports its position the arbitrator determines arbitrability, the Eighth Circuit determined "the act of incorporating Rule 7(a) of the AAA Rules provides [clear and unmistakable] evidence of the parties' intent to leave the question of arbitrability to the arbitrator . . . because Rule 7(a) expressly gives the arbitrator the power to rule on his or her own jurisdiction." **Fallo**, 559 F.3d at 876. Nevertheless "the Eighth Circuit [in **Fallo**] impliedly found that even where the parties agree to leave the issue of arbitrability to the arbitrator, a federal court retains the authority to determine the issue of validity in the first instance." **Hill v. Antioch Co.**, 8:09CV275, 2009 WL 3838251 (D. Neb. Nov. 17, 2009) (**citing Fallo**, 559 F.3d at 878-79). If Nebraska Machinery did not agree to Cargotec's terms and conditions, it follows that Nebraska Machinery did not agree to arbitration and this court

cannot force arbitration.  See *Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190, 208 (1991) ("[A] party cannot be forced to arbitrate the arbitrability question.").  Absent Nebraska Machinery's clear and unmistakable intention to submit the question of arbitrability to an arbitrator, this court retains jurisdiction to determine whether the parties entered into an arbitration agreement.  While citing the AAA Rules may be clear and unmistakable evidence that Cargotec intended for an arbitrator to determine arbitrability, Nebraska Machinery did not clearly and unmistakably agree to have an arbitrator decide the question of arbitrability because Nebraska Machinery did not agree to Cargotec's terms and conditions.

**B.   Terms of the Contract**

Nebraska Machinery argues there was no agreement to arbitrate or indemnify for two reasons:   1) Cargotec's terms and conditions, which included the disputed provisions, were never received and 2) Nebraska Machinery did not accept Cargotec's offers and proposed counter-offers.  See [Filing No. 7](#) - Brief p. 9, 13-15; [Filing No. 17](#) - Reply p. 8.  Nebraska Machinery argues its counter-offers did not include arbitration or indemnification provisions, therefore, it did not agree to arbitration and indemnification.  *Id.* at 13-14.

Cargotec argues, assuming this court has jurisdiction to determine arbitrability, which Cargotec contests, the parties entered into an arbitration agreement.  See [Filing No. 13](#) - Response p. 9.  Cargotec argues the purchase orders incorporated by reference Cargotec's terms and conditions which included an arbitration provision.  *Id.*  Cargotec argues Nebraska Machinery received and agreed to Cargotec's terms and conditions and is therefore bound by their agreement to arbitrate disputes.  *Id.* at 10.  Additionally, Cargotec argues Nebraska Machinery's recreated purchase orders do not constitute valid counter-offers because Cargotec never received the recreated purchase orders.  *Id.* at 13-14.

"The Federal Arbitration Act create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." ***Donaldson Co., Inc. v. Burroughs Diesel, Inc.***, 581 F.3d 726, 731 (8th Cir. 2009) (internal citation omitted).  However "[w]hen deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law

principles that govern the formation of contracts." **Hudson v. ConAgra Poultry Co.**, 484 F.3d 496, 500 (8th Cir. 2007) (**citing** **Kaplan**, 514 U.S. at 944). "Thus, state contract law governs the threshold question of whether an enforceable arbitration agreement exists between litigants; if an enforceable agreement exists, the federal substantive law of arbitrability governs whether the litigants' dispute falls within the scope of the arbitration agreement." **Donaldson Co.**, 581 F.3d at 731.

The parties agree there is no discernible difference between Nebraska and Kansas contract law. See [Filing No. 7](#) - Brief p. 8; [Filing No. 13](#) - Response p. 10. Therefore this court does not need to engage in a choice of law analysis. **See N & D Fashions, Inc. v. DHJ Indus., Inc.,** 548 F.2d 722, 724 (8th Cir. 1976) (noting it is unnecessary to resolve a choice-of-law issue where the states involved adopted the Uniform Commercial Code (U.C.C.) without substantive modification); **see** Neb. Rev. Stat. U.C.C. §§ 1-101, *et seq.*, Kan. Stat. Ann. §§ 84-1-101, *et seq.*

"To create a contract, there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract." **Gerhold Concrete Co., Inc. v. St. Paul Fire & Marine Ins. Co.**, 695 N.W.2d 665, 672 (Neb. 2005); **see Wachter Mgmt. Co. v. Dexter & Chaney, Inc.**, 144 P.3d 747, 751 (Kan. 2006). "A fundamental and indispensable basis of any enforceable agreement is that there be a meeting of the minds of the parties as to the essential terms and conditions of the proposed contract." **Peters v. Halligan**, 152 N.W.2d 103, 106 (Neb. 1967); **see Dougan v. Rossville Drainage Dist.**, 15 P.3d 338, 352 (Kan. 2000).

The U.C.C., which Kansas and Nebraska adopted, controls whether the parties formed a contract. Section 2-207 provides:

> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
> (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
>> (a) the offer expressly limits acceptance to the terms of the offer;
>> (b) they materially alter it; or

7

> (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
>
> (3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this act.

Neb. Rev. Stat. U.C.C § 2-207; Kan. Stat. Ann. § 84-2-207.

> [W]hen no contract is recognized under Subsection 2-207(1) . . . the entire transaction aborts at this point. If, however, the subsequent conduct of the parties - particularly, performance by both parties under what they apparently believe to be a contract - recognizes the existence of a contract, under Subsection 2-207(3) such conduct by both parties is sufficient to establish a contract, notwithstanding the fact that no contract would have been recognized on the basis of their writings alone.

***PCS Nitrogen Fertilizer, L.P. v. Christy Refractories, L.L.C.***, 225 F.3d 974, 980 (8th Cir. 2000); **see also** Neb. Rev. Stat. U.C.C. § 2-207 cmt. 7; Kan. Stat. Ann. § 84-2-207 cmt. 7.

If this court accepts as true Cargotec's and Nebraska Machinery's allegations regarding document exchange, without discrediting either party, there are two possible scenarios. In the first scenario, the parties did not receive each other's terms and conditions. Under the first scenario, the only documents sent and received were Cargotec's PO No. 1 and 2 and Nebraska Machinery Invoice No. 1 and 2. In the second scenario, the parties received all documents, including both parties' terms and conditions.

### 1. First Scenario

Under the first scenario, Nebraska Machinery received Cargotec's purchase orders and Cargotec received Nebraska Machinery's invoices. Neither party received any terms and conditions.

Cargotec's purchase orders constituted offers under U.C.C. § 2-206. **See** Neb. Rev. Stat. U.C.C. § 2-206; Kan. Stat. Ann. § 84-2-206. Cargotec's purchase orders

included the following language: "Standard [Cargotec] terms and conditions Form F-027 . . . apply to this order. If you do not have a copy of [this form] on file, please contact the buyer indicated." See Filing No. 8-2 Exs. A and E - Purchase Orders No. 1 and 2. Form F-027 included the disputed arbitration provision. The purchase orders properly incorporated Cargotec's terms and conditions. See ***Drain v. Bd. of Educ. of Frontier County Sch. Dist. No. 46***, 508 N.W.2d 255, 260 (Neb. 1993) (recognizing terms and conditions incorporated by reference in a contract are a valid part of a contract); ***Sw. Nat. Bank v. Simpson & Son, Inc.***, 799 P.2d 512, 517 (Kan. App. 1990) (same). Even if the document incorporated by reference is not attached to an offer or present during acceptance, the document is part of a contract. **See *Sw. Nat. Bank***, 799 P.2d at 517-19. Therefore, if Nebraska Machinery accepted Cargotec's offers, the referenced terms and conditions would be part of the contract.

Nebraska Machinery's invoices constituted acceptances of Cargotec's purchase orders. **See** Neb. Rev. Stat. U.C.C. § 2-207; Kan. Stat. Ann. § 84-2-207; **see also** ***Transamerica Oil Corp. v. Lynes, Inc.***, 723 F.2d 758, 765 (10th Cir. 1983) (stating an invoice could constitute an acceptance of an offer). Nebraska Machinery's invoices did not include additional or different terms. There is no indication on the invoices that Nebraska Machinery either accepted or rejected Cargotec's terms and conditions. However, assuming the parties only exchanged the purchase orders and invoices, with Cargotec's terms and conditions being properly incorporated by reference, the parties formed two contracts. These contracts included arbitration and indemnification provisions. Therefore, under this scenario, any dispute under the contract would be decided in arbitration.

### 2.    Second Scenario

Under the second scenario, the parties are assumed to have received all documents sent. This includes Cargotec's PO Nos. 1 and 2, Form F-027, Nebraska Machinery's PO Nos. 1 and 2, Nebraska Machinery's terms and conditions, and Nebraska Machinery's Invoice Nos. 1 and 2.

Cargotec's purchase orders constituted offers. Within such offers, Cargotec incorporated by reference Form F-027, which included the disputed arbitration and indemnification provisions. See Filing No. 8-1 Ex. A - Form F-027. In response,

Nebraska Machinery sent recreated purchase orders and invoices. **See** [Filing No. 8-2](#) Exs. B and F - Nebraska Machinery's PO Nos. 1 and 2; Exs. D and G - Nebraska Machinery Invoices Nos. 1 and 2. Nebraska Machinery's recreated purchase orders included terms and conditions that did not include arbitration or indemnification provisions provision. **See** [Filing No. 8-2](#) Ex. C - Nebraska Machinery's Terms and Conditions.

Although Cargotec incorporated by reference its terms and conditions and Nebraska Machinery is presumed to have received the terms and conditions under this scenario, Nebraska Machinery nevertheless rejected Cargotec's offers. Nebraska Machinery's recreated purchase orders operated as counter-offers. Nebraska Machinery chose not to sign Cargotec's purchase orders and accept Cargotec's terms and conditions. Instead, Nebraska Machinery recreated the purchase orders and conditioned its counter-offers on Nebraska Machinery's terms and conditions. Importantly, Nebraska Machinery did not include arbitration or indemnification provisions evidencing an intent not to agree to arbitration and indemnification. By including different terms and conditions, Nebraska Machinery expressly rejected Cargotec's terms and conditions and showed an intent to be bound only by its own terms and conditions. If Nebraska Machinery's counter-offers were accepted, there is no arbitration or indemnification agreement between the parties.

After Nebraska Machinery sent the counter-offers, Cargotec was in the position to accept Nebraska Machinery's counter-offers. Cargotec did not accept Nebraska Machinery's counter-offers in writing. Therefore, the parties merely exchanged offers. Accordingly, the parties' writings did not create a contract.

However, to the extent the parties' actions may nevertheless have created a contract, such factual circumstances may be taken into consideration under U.C.C. § 2-207(3). **See** Neb. Rev. Stat. U.C.C. § 2-207(3); Kan. Stat. Ann. § 84-2-207(3). The parties behaved in a manner recognizing the existence of a contract. **See** Neb. Rev. Stat. U.C.C. § 2-204 ("A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract."), Kan. Stat. Ann. § 84-2-204 (same). Nebraska Machinery delivered the engines and Cargotec accepted, paid for, and used the engines. Under the second scenario, the parties' behavior formed a contract. **See *PCS***

***Nitrogen Fertilizer, L.P. v. Christy Refractories, L.L.C.***, 225 F.3d 974, 981 (8th Cir. 2000) ("The parties clearly behaved in a manner that recognized the existence of a contract, as demonstrated by . . . delivery of the goods and . . . acceptance of, payment for, and attempted use of the goods."). In such a case, the "contract consist[s] of those terms on which the writings of the parties agree." **See** Neb. Rev. Stat. U.C.C. § 2-207(3) cmt. 7; Kan. Stat. Ann. § 84-2-207(3) cmt. 7. Under U.C.C. § 2-207(3), the contract incorporates terms on which the parties agree, which necessarily excludes the disputed arbitration and indemnification provisions in Cargotec's terms and conditions. As the parties did not agree to arbitration and indemnification, the contract does not include those provisions. Therefore, Nebraska Machinery is not required to submit to arbitration.

The court finds the second scenario represents the most plausible explanation of the parties' interaction. The court is not persuaded by the arguments that although each party sent all documents, each party received limited documents in return. Although there is no evidence the parties received all the documents, there is also no evidence disputing the parties' assertions that all documents were sent. If Cargotec sent Form F-027 with the purchase orders, there is a presumption Nebraska Machinery received those documents. Similarly, if Nebraska Machinery sent the invoices with counter-offers and terms and conditions, there is a presumption Cargotec received those documents. **See** ***Sherrod v. State Dep't of Corr. Servs***, 557 N.W.2d 634, 639 (Neb. 1997) ("A letter properly addressed, stamped, and mailed raises a presumption that the letter reached the addressee in the usual course of the mails."); **accord** ***Evenson Trucking Co. v. Aranda***, 127 P.3d 292, 304 (Kan. 2006) (recognizing the law presumes delivery of a properly addressed piece of mail). Therefore, the court assumes the parties received all documents sent and under that scenario, as previously explained, the parties did not agree to arbitration.

**IT IS ORDERED that:**

1. Nebraska Machinery's Motion to Dismiss or Stay Arbitration and to Determine Arbitrability (Filing No. 6) is granted.

2. Cargotec's Motion to Compel Arbitration and to Dismiss or, Alternatively, Stay Proceedings (Filing No. 15) is denied.

**ADMONITION**

Pursuant to [NECivR 72.2](#) any objection to this Order[1] shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Order. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 25th day of January, 2013.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge

---

[1] A review of the case law reveals that courts are divided on whether motions to compel arbitration are dispositive for purposes of 28 U.S.C. § 636(b)(1)(A).

**Non-Dispositive**. In ***PowerShare, Inc. v. Syntel, Inc.***, 597 F.3d 10, 14 (1st Cir. 2010), the court reasoned motions to compel arbitration are non-dispositive motions. In ***Wilken Partners, L.P. v. Champps Operating Corp.***, Case No. 11-cv-1005, 2011 WL 1257480, at *1 (D. Kan. April 4, 2011) the court decided that a "motion to compel arbitration is non-dispositive, as an Article III judge ultimately will be required to confirm, modify or vacate any arbitration award involving the parties to [the] action." **Accord** ***All Saint's Brands, Inc. v. Brewery Group Denmark, A/S***, 57 F. Supp. 2d 825 (D. Minn. 1999); ***Herko v. Metro. Life Ins. Co.***, 978 F. Supp. 141, 142 n. 1 (W.D. N.Y. 1997); ***SDD99, Inc. v. ASA Int'l, Ltd.***, Case No. 06-CV-6089, 2007 WL 952046 (W.D. N.Y. Mar. 29, 2007); ***Jackman v. Jackman***, Case No. 06-1329, 2006 WL 3792109 (D. Kan. Dec. 21, 2006).

**Dispositive**. In ***Coxcom, Inc. v. Egghead Telecom, Inc.***, Case No. 08-CV-698, 2009 WL 4016629, at *1 (N.D. Okl. 2009), the presiding magistrate judge noted "[c]ourts generally regard a motion to compel arbitration either as a case dispositive matter or a matter not within the statutory authority of a U.S. Magistrate Judge to resolve by Order." In ***Flannery v. Tri-State Div.***, 402 F. Supp. 2d 819 (E.D. Mich. 2005), the district court reasoned that a magistrate judge's order compelling arbitration terminated the litigation in district court and transferred the case to another forum; therefore, the court viewed such an order as the functional equivalent of a dispositive matter, which was reviewable *de novo* pursuant to 28 U.S.C. § 636(b)(1). **See also** ***Chen–Oster v. Goldman, Sachs & Co.***, 785 F. Supp. 2d 394, 399 (S.D. N.Y. 2011) (finding persuasive those cases concluding that motions to compel are not case-dispositive) and ***BBCM, Inc. v. Health Sys. Int'l, LLC***, Case No. C10-0086, 2010 WL 4607917, at *1 (N.D. Iowa November 4, 2010) (noting a split of authority, the magistrate judge issued a report and recommendation "out of an abundance of caution").

I am inclined to agree with ***PowerShare*** and ***Wilken***; however, if the district court determines that the present motions are dispositive matters, then my decision on that point will be reviewable *de novo*.